UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:15-cr-21004-CMA-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | Miami, Florida |
| Plaintiff, | January 29, 2016 |
| vs. | 10:15 a.m. to 10:35 a.m. |
| STEPHEN M. COSTA, | Courtroom 12-2 |
| Defendant. | (Pages 1 to 17) |

---

CHANGE OF PLEA HEARING
BEFORE THE HONORABLE CECILIA M. ALTONAGA,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: FRANK HARRY TAMEN, ESQ.
Assistant United States Attorney
99 Northeast Fourth Street
Miami, Florida 33132
(305) 961-9022
frank.tamen@usdoj.gov

FOR THE DEFENDANT: LILLY ANN SANCHEZ, ESQ.
The LS Law Firm
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131-3439
(305) 503-5503
lsanchez@thelsfirm.com

REPORTED BY: STEPHANIE A. McCARN, RPR
Official Court Reporter
400 North Miami Avenue
Twelfth Floor
Miami, Florida 33128
(305) 523-5518
Stephanie_McCarn@flsd.uscourts.gov

# I N D E X

## WITNESSES

| WITNESSES FOR THE GOVERNMENT: | Page |
| --- | --- |
| | -- |

| WITNESSES FOR THE DEFENDANT: | Page |
| --- | --- |
| | -- |

| EXHIBITS MARKED & ADMITTED IN EVIDENCE | MARKED | ADMITTED |
| --- | --- | --- |
| Government's Exhibit No. | -- | -- |
| Defendant's Exhibit No. | -- | -- |

## MISCELLANEOUS

| | Page |
| --- | --- |
| Proceedings.................................... | 3 |
| Court Reporter's Certificate...................... | 17 |

(The following proceedings were held at 10:15 a.m.)

THE COURT: United States and Stephen Costa.

MS. SANCHEZ: Good morning.

THE COURT: Good morning. Counsel, please state your appearances.

MR. TAMEN: Good morning, Your Honor, Frank Tamen representing the United States.

MS. SANCHEZ: Your Honor, Lilly Ann Sanchez on behalf of Mr. Costa, who is present before the Court.

THE COURT: Please be seated.

MR. TAMEN: Judge, before we begin the proceeding, I think the Court has the original plea agreement and --

THE COURT: I do.

MR. TAMEN: And the factual proffer. We agreed to one small change in the factual proffer. I would like to write that in and then we can all initial it.

THE COURT: All right. Let me return this to you, then.

(Pause in proceedings.)

THE COURT: Thank you.

Mr. Costa, please raise your right hand.

(The Defendant was sworn.)

THE DEFENDANT: I do.

THE COURT: All right.

Mr. Costa, we began this a few days ago. Let's try it

one more time.

I'm going to be asking you some questions this morning in order to accept your change in plea from a plea of not guilty to a plea of guilty. If at any time you do not understand any of my questions, please let me know, and I will try to clarify the question for you.

Also, if at any time you would like to speak with your attorney off the record and consult with her, let me know that, and we will pause to give you an opportunity to do so. And, last, please note that you are under oath. All of your answers to my questions need to be truthful, and if they are not, you may be subjecting yourself to charges of perjury.

Do you understand these instructions?

THE DEFENDANT: Very clearly.

THE COURT: Please state your full name.

THE DEFENDANT: Stephen Manuel Costa.

THE COURT: How old are you?

THE DEFENDANT: I'm 31 years old.

THE COURT: How far did you go in school?

THE DEFENDANT: Some college.

THE COURT: And what country are you a citizen of?

THE DEFENDANT: The United States of America.

THE COURT: Have you ever been treated for a mental illness or for an addiction to narcotic drugs?

THE DEFENDANT: Yes, a mental illness.

**THE COURT: And what is that?**

**THE DEFENDANT: Bipolar disorder.**

**THE COURT: Are you taking any medication, presently, for that?**

**THE DEFENDANT: Yes.**

**THE COURT: And what medication is that?**

**THE DEFENDANT: Olanzapine, better known as Zyprexa.**

**THE COURT: Does that medication affect your ability to understand what's happening here in the courtroom this morning?**

**THE DEFENDANT: No.**

**THE COURT: Does that medication affect your volition, your ability to make decisions freely and voluntarily?**

**THE DEFENDANT: No.**

**THE COURT: Do you believe that you have any mental or physical condition or illness that prevents you from understanding what's happening here in court this morning?**

**THE DEFENDANT: No. I would like to go one step back. I am also taking Depakote.**

**THE COURT: All right.**

**THE DEFENDANT: And Adderall for ADHD at times of necessity.**

**THE COURT: And do those medications affect your ability to comprehend or your ability to freely make decisions?**

**THE DEFENDANT: No.**

THE COURT: Ms. Sanchez, in your opinion is your client competent to enter a guilty plea?

MS. SANCHEZ: Yes, he is, Your Honor.

THE COURT: Mr. Costa, prior to today, did you receive a copy of the indictment containing the written charges against you?

THE DEFENDANT: Yes, I have.

THE COURT: Have you fully discussed the indictment and the case in general with Ms. Sanchez as your attorney?

THE DEFENDANT: Yes.

THE COURT: And are you fully satisfied with the counsel, the representations and the advice that you have received from your attorney?

THE DEFENDANT: I am fulfilled, yes -- satisfied.

THE COURT: So this morning you plead guilty to Count 1 of that indictment. And that count charges you with conspiracy to commit healthcare fraud in violation of 18 U.S. Code §1349.

Do you understand the charge?

THE DEFENDANT: I do.

THE COURT: And I would ask the Government to please set forth the elements of this offense.

MR. TAMEN: The elements are that the Defendant engaged in an agreement with other individuals to defraud a -- an entity receiving federally financed healthcare provisions

and that they obtained funds by means of false, material misrepresentations or false statements.

THE COURT: Thank you.

Ms. Sanchez, do you agree that that's an accurate statements of the elements?

MS. SANCHEZ: Yes, Your Honor.

THE COURT: And would you please state the steps you have taken to familiarize Mr. Costa with the charges against him, the Government's evidence, his defenses, his right to proceed to trial and the consequences of a guilty plea?

MS. SANCHEZ: Yes, Your Honor. As this Court is well aware, this case has been pending over two years, now, out of the Southern District of New York. So since the inception of this case in New York, not only have I had repeated consultations with Mr. Costa regarding the indictment, we -- because we have been in cooperation with the FBI agents and the prosecutors in the Southern District of New York, we have had numerous meetings with them, as well. Not only have I gone through all of the elements of the allegations in this case, but the FBI agents and the prosecutors in New York have done so, as well.

We -- when the case was going to be transferred down to the Southern District of Florida, myself and Mr. Costa also met with Mr. Tamen in a meeting where the charges were discussed. We have gone through the factual proffer line by

line to make sure that the factual proffer is correct with what the allegations are out of the Southern District of New York.

And, moreover, Mr. Costa is well aware of his rights that he is giving up by pleading guilty. We have gone over them repeatedly in this case and in the other state case up in New York, ah, so we are, ah, I believe, have more than gone through everything that -- and all of Mr. Costa's rights.

In addition, he has also had the counsel of other attorneys that he has reached out to, as well, to confirm everything that I have discussed with him and the prosecutors have discussed with him.

THE COURT: Thank you.

Mr. Costa, is that your understanding, as well?

THE DEFENDANT: That is my understanding, as well.

THE COURT: Okay. Mr. Costa, do you have in front of you a document entitled Rule 20 Plea Agreement?

THE DEFENDANT: I currently do.

THE COURT: I have what appears to be the original. It shows me your signature with the date of September 15, 2015. Did you have the opportunity of reading this and discussing it fully with your attorney before you signed it?

THE DEFENDANT: Yes.

THE COURT: I am going to be going over the agreement with you. I will not read it, but I do want to go over some of its provisions to assure myself that you understand it and that

your plea is voluntary. And I am going to begin with Paragraph 4. And I am going to put Paragraph 4 into my own words. I am not going to read it.

It discusses the sentencing process. After I accept your plea of guilty here today, I am going to ask a probation officer to prepare what is known as a presentence investigation report. In order to do that, the officer will, among other things, meet with you and interview you and gather information about you to include in that report. A draft report will be circulated to the parties several weeks before sentencing, and the parties will have the opportunity to file written objections to the information in the report. If any objections are filed, the probation officer prepares what is known as an addendum and files that.

One of the sections of the report will contain a calculation under the Federal Advisory Sentencing Guidelines of an advisory sentencing guideline range from a low to a high end that the Guidelines will suggest as a reasonable sentence for you. At your sentencing hearing, I will orally announce what I believe is your applicable sentencing guideline range. And what I orally announce may be different from what you see in the report. It may also be different from what you and Ms. Sanchez discuss as a likely guideline range.

After I do that, I go on to consider and apply a number of statutory factors before imposing sentence, so at the

end of this process the sentence I impose may end up being higher than or lower than your advisory guideline range. I have the authority to sentence you up to the statutory maximum, and you may not withdraw your plea of guilty as a result of a sentence imposed.

Do you understand and agree?

THE DEFENDANT: I understand all the variables involved, and I do agree.

THE COURT: Paragraph 5 informs you of your maximum possible sentence, and that is ten years' imprisonment followed by supervised release of up to three years and a fine of up to $2.4 million.

Do you understand what your maximum possible sentence may be?

THE DEFENDANT: I do.

THE COURT: In Paragraph 9, the Government agrees to recommend at sentencing that I reduce by two levels the sentencing guideline level applicable to your offense because of your affirmative and timely acceptance of personal responsibility.

If your guideline range level should be 16 or higher, then the Government will seek an additional one-level decrease. You see that there are three conditions outlined in Paragraph 9 that you must satisfy in order for the Government to make these recommendations.

Do you understand and agree?

THE DEFENDANT: I understand and agree.

THE COURT: Mr. Costa, is anyone putting pressure upon, forcing you or coercing you to plead guilty and agree to these terms?

THE DEFENDANT: No.

THE COURT: Has anyone made to you any promises or assurances in exchange for your plea of guilty other than the promises contained in this written plea agreement?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will to the charge contained in Count 1 because, in fact, you are guilty as charged?

THE DEFENDANT: Sorry, one second.

(Pause in proceedings.)

THE DEFENDANT: Yes.

THE COURT: You understand that by pleading guilty I will be adjudicating you guilty, and as a result you will suffer the loss of valuable civil liberties. These include the right to vote, the right to hold office, the right to serve on a jury, the right to possess firearms, and in the event that you are not a U.S. citizen, it may be used against you to deport you to your native country.

Do you understand?

THE DEFENDANT: I understand clearly.

**THE COURT: I am going to go over with you at this time the constitutional rights that you give up by pleading guilty. You understand that if this case had proceeded to a trial, you would have had the right to be represented by an attorney. The Government would be required to bring witnesses to court who would testify in your presence. You would have the right to confront those witnesses and have your attorney cross-examine them. You would have the right to bring witnesses of your own to testify in your defense, and if those witnesses did not wish to come to court, you could use the Court's compulsory process to get them here.**

**You would have the right to testify and have your testimony be considered like that of any other witness in the case, or you could elect to remain silent, and if you did so, that could not be used against you in any way.**

**You would be entitled to the presumption of innocence. The Government would have to prove the charges against you beyond and to the exclusion of every reasonable doubt, and that is the highest burden of proof that we have in our system of laws.**

**Your case would be tried to a jury consisting of 12 members whom you and the Government would select. And if you lost at trial, you would have the right to take an appeal.**

**Do you understand by pleading guilty, you give up all of these rights that we associate with trial as well as with**

appeal?

THE DEFENDANT: I do understand.

THE COURT: Mr. Costa, do you have in front of you a second document, this one entitled Factual Proffer?

THE DEFENDANT: I currently do.

THE COURT: I have what appears to be an original, also bearing the date of September 15 and your signature. Did you have the opportunity of reading this and discussing it fully with your attorney before you signed it several months ago?

THE DEFENDANT: Yes, I have gone over it numerous times.

THE COURT: So if this case had gone to trial, the Government would be able to prove beyond a reasonable doubt that prescription pharmaceuticals are sold with labelling indicating their brand, lot numbers, strength, required storage conditions, quantity, expiration dates and pharmacy labels identifying the individuals to whom they were prescribed. Wholesale quantities of such medicines are sold with documentation of their origination and manufacturer and distributors who have handled them. Such medicines cannot be sold if they have not been handled by licensed pharmaceutical distributors and properly documented as to their origin.

During the charged conspiracy, other offenders obtained quantities of expensive medicines such as those used

to treat asthma, psychiatric symptoms and HIV infections by buying them from purported patients who had obtained them from retail pharmacies in New York City as Medicaid beneficiaries. These medicines were aggregated into quantities by coconspirators, and you, then, purchased them in quantity.

With your knowledge, to make the medicines remarketable, the pharmacy labels with the patients' identities were removed, and the bottles were cleaned to make them appear new instead of having been previously dispensed. You incorporated and used wholesale distribution companies to sell the second-hand prescription drugs to pharmacies.

As part of the scheme, your coconspirators created fraudulent documentation to falsely show the medicines bought on the streets from individuals were, instead, new medicines being shipped through legitimate pharmaceutical distributors and kept in properly controlled conditions.

Some of the pharmacies did not know they were receiving illegally obtained, second-hand medicines. Medicaid reimbursed various pharmacies for the sales of such medicines to patients which the Medicaid program would not have done, had the nature of the medicines as repurchased and relabeled been known.

During the course of this scheme, the value of the pharmaceuticals involved in your illegal transactions was approximately $1.2 million. Payments for these medicines

ultimately came from funds provided to the Medicaid program for the purpose of providing medicines to poor people.

Are all of these facts true and correct?

THE DEFENDANT: With the exception of a few typographical errors, they are true. Yes.

THE COURT: Ms. Sanchez, are you satisfied your client understands his rights that he is giving up today and that there is a sufficient factual basis for his plea of guilty?

MS. SANCHEZ: I do, Your Honor.

THE COURT: Mr. Costa, how do you plead now to the charge contained in Counts 1 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the Court that the Defendant Stephen Costa is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea based upon his conversations with his attorney and the colloquy before the Court, that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense and that the agreement presented to the Court was voluntarily entered into and is not the result of force, threats or coercion.

I also find the Defendant has entered his plea with the advice and assistance of effective and competent counsel.

**Your plea is, therefore, accepted. You are now adjudged guilty. And I will have you back in court for your sentencing hearing on Friday, April 18, at 9:00 a.m.**

**And you all have a good day.**

**MS. SANCHEZ: Thank you, Your Honor. And thank you, again, for accommodating us from Tuesday to today and giving us the few extra days.**

**THE COURT: Certainly.**

**MS. SANCHEZ: That was helpful.**

**THE COURT: Thank you.**

**THE DEFENDANT: Thank you. And I would also like to apologize for any inconvenience that I caused during this period of time.**

**THE COURT: There was no inconvenience. Thank you.**

**I am sorry. I am being told the date should be April 8, not April 18, so my apologies. Friday, April 8.**

**THE DEFENDANT: Understood, thank you.**

**THE COURT: Thank you.**

**(The proceedings adjourned at 10:35 a.m.)**

**C E R T I F I C A T E**

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_06/21/16__
DATE

STEPHANIE A. McCARN, RPR
Official United States Court Reporter
400 North Miami Avenue, Twelfth Floor
Miami, Florida 33128
(305) 523-5518